## McCabe, Appellant, v. Philadelphia.

*Negligence—Municipalities—Sidewalk—Ice—Hole in ice—Proximate and remote cause—Notice—Nonsuit.*

In an action against a city by a girl to recover damages for personal injuries, it appeared that plaintiff's foot and leg plunged into a hole in the ice on a sidewalk. It was shown that the sidewalk was entirely covered with ice for a considerable distance, and at the place of the accident the ice was between two and three feet deep. The hole was large enough to admit the foot, and was full of water. It was deep enough to wet the plaintiff's stocking nearly up to her knee. She testified that she did not slip on the ice, but that her foot plunged directly into the hole. Plaintiff had passed over the pavement daily, but had not observed the hole before. Two of her witnesses testified that they had seen an opening in the immediate locality where the accident happened, but they did not clearly identify the opening which they saw with that which occasioned the accident. The authorities had no actual notice of the existence of the hole. The evidence showed that the weather had been unusually severe, and so continuous, that the ice on the pavement was constantly accumulating. *Held,* (1) that the hole and not the accumulation of ice was the proximate cause of the injury; (2) that a nonsuit was properly entered.

Argued Jan. 14, 1907. Appeal, No. 249, Jan. T., 1906, by plaintiffs, from order of C. P. No. 1, Phila. Co., June T., 1905, No. 1,015, refusing to take off nonsuit in case of Mary E. McCabe, a minor, by her father and next friend, John T. McCabe, and John T. McCabe in his own right v. City of Philadelphia. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before BRÉGY, J.

The circumstances of the accident are stated in the opinion of the Supreme Court.

*Error assigned* was refusal to take off nonsuit.

*Frederick H. Warner,* with him *Arthur B. Houseman,* for appellants.—The negligence of the city was clearly established both in regard to the sheet of ice and the hole in it: Dean v.

New Castle, 201 Pa. 51; Reed v. Schuylkill Haven Boro., 22 Pa. Superior Ct. 27.

*Harry T. Kingston,* assistant city solicitor, with him *John L. Kinsey,* city solicitor, for appellee.—It would seem that the case falls within Garland v. Wilkes-Barre, 212 Pa. 151; see also Burns v. Bradford City, 137 Pa. 361.

OPINION BY MR. JUSTICE STEWART, February 25, 1907 :

The accident to the plaintiff, complained of as the result of defendant's negligence, happened in this wise. At an early hour in the morning, while it was yet dark, and darker than usual because of the fact that the street lighting had been temporarily interrupted, plaintiff in passing along the sidewalk encountered a sheet of ice that covered the entire pavement from house line to the curb, for a considerable distance. Plaintiff was walking upon the ice, about the middle of the way, when she stepped into a hole covered with a thin coating of ice—and for this reason unobserved by her—which extended through the body of the ice to the pavement beneath and was filled with water. The hole was just large enough to admit the foot ; and into it she plunged with one limb up to her knee. The rest of her person was thrown back on the ice, and her injury resulted from this fall. The ice at this point was between two and three feet deep ; and the hole as described by the plaintiff, " was just a round little hole, like as if someone had cut it through." To the question what was its diameter in inches, she replied : " I could not tell you that, I know it came up to my knee. My stocking was all wet nearly up to my knee." When asked whether she had slipped, she said : " My foot went right into the hole and it threw me of course on my back. I did not slip at all, just went right into the hole." In another part of her testimony she described the hole as just large large enough to admit her foot. The ice that covered the pavement was the accumulation of weeks if not months, the weather having been unusually and continuously severe. It had not prevented the public use of the pavement, and so far as we know no one was injured in consequence of it. Plaintiff herself had passed over it daily without accident, and had never observed the hole into which she stepped

the morning of the accident. If negligence on the part of the defendant, in suffering so great an accumulation of ice to remain for so long a period on the pavement, be conceded, the question remains, was such negligence the proximate cause of the accident? But for the accumulation of the ice the accident would not have happened. This, however, does not bring the answer. Quite as much could be affirmed with respect to any condition antecedent, however remote, which was in the causative line. Responsibility for negligence does not extend to every consequence; it must have its limitations. The law in such cases looks at the near, not the remote. Was there any intervening cause, distinct in itself, though related to and conditioned on what went before, to which the accident may be referred? If so, defendant's relation to such intervening cause is the matter to be adjudged; by its responsibility for that, is its negligence to be determined. The immediate and direct cause of plaintiff's accident was the hole in the ice. She did not slip on the ice, nor did she fall in consequence of any obstruction it presented. She fell because her foot and limb plunged into a narrow hole in the ice in the middle of the pavement. That this hole, covered as it was by a thick coating of ice, was a dangerous pitfall, cannot be gainsaid. Anyone stepping into it incautiously would most likely be injured just as the plaintiff was. Not so with respect to walking upon the ice itself. The continued use of the way by the public, with the ice upon it for months, and by the plaintiff herself, without injury, shows the marked difference between the two circumstances, and enables us to see how the hole may, and should be regarded as an independent and at the same time the proximate cause of plaintiff's injury. If the hole was there by the defendant's direct agency, negligence in leaving it uncovered would follow necessarily, and responsibility in connection therewith. But this is not pretended. If the effort be to derive responsibility by connecting it with the ice accumulation, such result can only be reached in case it is made to appear that pitfalls of this character are the probable and natural consequence of ice accumulation, and therefore to be anticipated. No one attempted to account for the existence of the hole into which plaintiff fell. That it was the work of the elements does not seem probable. Its size, location and character, and the

fact that it was filled with water, whereas all about it was solid compact ice, would seem to indicate some other origin.   If resulting from other than natural causes, negligence could not be imputed to the defendant from the mere fact that it was there.   If from natural causes, experience and observation forbid that it should be regarded as anything less than extraordinary, so unusual that the defendant could not be charged with negligence in not foreseeing it.   As was said in South Side Pass. Railway Company v. Trich, 117 Pa. 390, " The utmost that can be said would be, that such a consequence might possibly happen.   But things or results which are only possible, cannot be spoken of as either probable or natural.   For the latter are those things or events which are likely to happen and which for that reason should be foreseen.   Things which are possible may never happen, but those which are natural or probable are those which do happen, and happen with such frequency or regularity as to become a matter of definite inference.   To impose such a standard of care as requires, in the ordinary affairs of life, precaution on the part of individuals against all the possibilities which may occur, is establishing a degree of responsibility quite beyond any legal limitations which have yet been declared."   The accumulation of ice being the proximate cause, and the defendant not being chargeable with negligence simply because of the existence of the hole, can its negligence be derived from other circumstances ?   This question remains to be considered.   Plaintiff, though she had passed ever this way daily, had never observed the opening in the ice.   Two of her witnesses testify that they had seen such an opening in the immediate locality where the accident happened.   Their testimony does not certainly and clearly identify the opening they saw with that which occasioned plaintiff's fall ; that, however, would be a question for the jury.   One saw a hole a week before the accident, and again three days before ; the other saw it once, about a week before.   It is not pretended that the authorities had actual notice of the existence of the hole.   According to plaintiff's testimony it was a pitfall, concealed from her by a covering of ice.   The testimony of all the witnesses was that the weather was unusually severe, and so continuous that the ice on the pavement was constantly accumulating.   Under such conditions,

the opening would be likely to escape observation at most times except as searched for. Certainly it was not so obvious that an officer exercising reasonable supervision of the highway should have observed it; and this is the measure of defendant's duty, reasonable supervision, not actual search for defects: Duncan v. Philadelphia, 173 Pa. 550. Had it been an open and exposed danger, obvious to those charged with supervision had they exercised reasonable vigilance, notice to the defendant would have been imputed from the length of time it had been allowed to remain there; but this element too is lacking in the case. The motion for nonsuit was properly allowed.

Judgment affirmed.